UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:18-CV-00128-GNS

VALERIE POWELL,
Administratrix of the Estate
of Lenita Cole                                                                                    PLAINTIFF

v.

MACKIE SHELTON; and
BARRY DYER                                                                                       DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants' Motion to Dismiss (DN 6). The motion is ripe for decision. For the reasons provided below, the motion is **GRANTED**.

### I.   BACKGROUND

This is an action arising under the Sherman Antitrust Act ("the Sherman Act"), 15 U.S.C. § 1 *et seq.*, concerning Defendants' alleged conduct at the public auction for the Estate of Lenita Cole ("the Estate") held on April 21, 2018, for real property located in Scottsville, Kentucky. (Compl. ¶¶ 3-6, DN 1). Plaintiff Valerie Powell ("Plaintiff"), who is the daughter of Lenita Cole and Administratrix of the Estate, alleges that "during the course of the auction, Defendants recognized that there was only one (1) competing bidder, namely Chris Shockley [("Shockley")] who was bidding on behalf of his farm partnership." (Compl. ¶ 8). Plaintiff claims that Defendant Barry Dyer ("Dyer") approached Shockley and demanded that Shockley pay Defendants $40,000 or else they would continue bidding on the property. (Compl. ¶ 8). Shockley and his farming partner, Jason Williams ("Williams"), allegedly agreed to pay $40,000 to acquire the property free

of competing bids from Defendants. (Compl. ¶ 9). Shockley and Williams ultimately paid $492,200 for the property upon placing the highest bid at the auction. (Compl. ¶ 10).

Afterward, "the [E]state investigated the matter and concluded that it was deprived of $158,200 as a result" of Defendants' conduct. (Pl.'s Resp. 2). Plaintiff reaches this conclusion because "Shockley and Williams were prepared to pay up to . . . $650,400" for the property, compared to the $492,200 they ultimately paid. (Compl. ¶ 10). As a result, Plaintiff alleges that she and her brother—who is also a beneficiary of the Estate and a resident of Tennessee—were each deprived of $79,100. (Pl.'s Resp. 2).

Plaintiff initiated the present action pursuant to 15 U.S.C. § 15 seeking to recover treble damages as well as reasonable attorneys' fees and litigation costs.[1] (Compl. ¶¶ 12-13). Defendants move to dismiss Plaintiff's Complaint on two grounds. First, Defendants argue the Court lacks subject matter jurisdiction because "Plaintiff must establish a nexus between [Defendants'] conduct and interstate commerce in order to bring a Sherman Act violation case." (Defs.' Mot. Dismiss 2, DN 6). Since the Estate was being probated in Kentucky, and because Defendants, Plaintiff, Shockley and Williams are all residents of Kentucky, Defendants "request this Court to dismiss this case for lack of subject matter jurisdiction [because] the transaction . . . was purely intrastate and did not have a substantial impact on interstate commerce." (Defs.' Mot. Dismiss 3). Second, Defendants contend Shockley and Williams are indispensable parties to this action under Fed. R. Civ. P. 19(a)(1) whose non-joiner warrants dismissal. (Defs.' Mot. Dismiss 3-4).

In her response, Plaintiff asserts that Defendants' conduct affects interstate commerce "given that the beneficiary residing in Tennessee was deprived of $79,000 or more as a result of Defendants' wrongdoing." (Pl.'s Resp. Defs.' Mot. Dismiss 4, DN 8 [hereinafter Pl.'s Resp.]).

---

[1] Kentucky has a similar antitrust law, KRS 367.175, but Plaintiff asserted only a federal claim.

Regarding Defendants' motion to join Shockley and Williams as indispensable parties, Plaintiff argues "Defendants have merely made conclusory statements unsupported by any specific facts or legal arguments" and "the law is clear that potential joint tortfeasors are only permissive parties." (Pl.'s Resp. 6).

## II.     <u>STANDARD OF REVIEW</u>

Motions to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) fall into two categories: facial attacks and factual attacks. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). Facial attacks challenge subject matter jurisdiction as to the sufficiency of the pleadings, and a Court will consider the material allegations in the complaint as true and construe them in the light most favorable to the nonmoving party. *Id*. Factual attacks challenge subject matter jurisdiction as to the facts alleged in the pleadings, and in such situations, courts weigh conflicting evidence and resolve factual disputes in determining whether there is jurisdiction. *Id.* "Subject matter jurisdiction is always a threshold determination." *Am. Telecom Co. v. Republic of Lebanon*, 501 F.3d 534, 537 (6th Cir. 2007) (citation omitted). In most circumstances, the plaintiff bears the burden to survive Fed. R. Civ. P. 12(b)(1) motions to dismiss. *See Bell v. Hood*, 327 U.S. 678, 681-82 (1946). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

## III.     <u>DISCUSSION</u>

Because Defendants challenge the Court's subject matter jurisdiction over Plaintiff's claim based on the sufficiency of her pleadings, this is a facial attack. *See Ritchie*, 15 F.3d at 598. The

Court will accordingly consider the material allegations in Plaintiff's Complaint as true and construe them in her favor. *See id*.

Section 1 of the Sherman Act provides: "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal." 15 U.S.C. § 1. In conjunction with this, Congress has created a private cause of action for "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws. . . ." 15 U.S.C. § 15(a). To state such a private cause of action, Plaintiffs must plead facts demonstrating three elements: "(1) the existence of a contract, combination, or conspiracy (2) affecting interstate commerce (3) that imposes an unreasonable restraint on trade." *Churchill Downs Inc. v. Thoroughbred Horsemen's Grp., LLC*, 605 F. Supp. 2d 870, 887 (W.D. Ky. 2009) (citations omitted).

In this action, Plaintiff has alleged an oral contract formed between Defendants and Shockley in satisfaction of the first element. Plaintiff has also made allegations that satisfy the third element because she accuses Defendants of bid rigging—a practice which has long been barred as an unreasonable, horizontal restraint on trade and a *per se* violation of Section 1 of the Sherman Act. *See, e.g.*, *Expert Masonry, Inc. v. Boone Cty., Ky.*, 440 F.3d 336, 344 (6th Cir. 2006) (citations omitted); *United States v. W.F. Brinkley & Son Constr. Co.*, 783 F.2d 1157, 1161 (4th Cir. 1986) ("[W]here two or more persons agree that one will submit a bid for a project higher or lower than the others or that one will not submit a bid at all, then there has been an unreasonable restraint on trade which violates the Sherman Antitrust Act."); *United States v. Koppers Co.*, 652 F.2d 290, 294 (2d Cir. 1981) ("[I]n cases involving behavior such as bid rigging, which has been classified by courts as a *per se* violation, the Sherman Act will be read as simply saying: '"An agreement among competitors to rig bids is illegal."'" (citation omitted)).

In their motion, Defendants do not challenge Plaintiff's allegations under either the first or third prongs but focus instead on the second. Thus, the disputed issue presently before this Court is whether Plaintiff has alleged facts indicating that Defendants' alleged bid rigging conspiracy affected interstate commerce. *See McLain v. Real Estate Bd. of New Orleans, Inc.*, 444 U.S. 232, 241-42 (1980).

"In every federal antitrust case, the critical threshold inquiry is whether a sufficient nexus existed between the parties' activities and interstate commerce, thus bringing the claim within the Sherman Act's parameters." *Stone v. William Beaumont Hosp.*, 782 F.2d 609, 613 (6th Cir. 1986). There are two avenues through which a plaintiff may satisfy this threshold inquiry: "either . . . defendants' activity is itself in interstate commerce or, if it is local in nature, . . . it has an effect on some other appreciable activity demonstrably in interstate commerce." *McLain*, 444 U.S. at 242 (citation omitted). The first avenue has come to be known as the "in commerce" test, while the second is known as the "effect on commerce" test. *Id.* at 241.

Plaintiff seems to make arguments under both tests. First, Plaintiff posits that because her brother—who is also a beneficiary of the Estate—is a resident of Tennessee, Defendants' conduct had a direct impact on interstate commerce insofar as they deprived him of $79,100 in auction proceeds that would have crossed state lines. (Pl.'s Resp. 4). Under the "effect on commerce" test, Plaintiff points to *McLain v. Real Estate Board of New Orleans, Inc.* and *United States v. Romer*, 148 F.3d 359 (4th Cir. 1998) (abrogated on other grounds by *United States v. Strassini*, 59 F. App'x 550 (4th Cir. 2003)) to support the proposition that Defendant's intrastate conduct "nevertheless substantially affect[s] interstate commerce." (Pl.'s Resp. 3).

5

A.     **<u>In Commerce Test</u>**

"The conceptual distinction between activities 'in' interstate commerce and those which 'affect' interstate commerce has been preserved in the cases, for Congress has seen fit to preserve that distinction in the antitrust and related laws by limiting the applicability of certain provisions to activities demonstrably 'in commerce.'" *McLain*, 444 U.S. 241-42 (citations omitted). Examples of this can be found in provisions of the Clayton Act and the Robinson-Patman Act which apply only to activities occurring in commerce, and the Supreme Court has developed its "in commerce" test for the Sherman Act through analyzing these provisions. *See*, *e.g.*, *id.*; *Gulf Oil Corp. v. Copp Paving Co.*, 419 U.S. 186, 195 (1974) ("[T]he distinct 'in commerce' language of the Clayton and Robinson-Paton Act provisions . . . appears to denote only persons or activities within the flow of interstate commerce . . . ."); *United States v. Am. Bldg. Maint. Indus.*, 422 U.S. 271, 276 (1975) (finding Section 7 of the Clayton Act "cannot be satisfied merely by showing that allegedly anticompetitive . . . activities affect commerce." (internal quotation marks omitted) (quoting *Gulf Oil*, 419 U.S. at 195)). Therefore, to pass the "in commerce" test, the activity must be directly "within the flow of interstate commerce—the practical, economic continuity in the generation of goods and services for interstate markets and their transport and distribution to the consumer." *Gulf Oil*, 419 U.S. at 195.

The conduct at issue here—Defendants' alleged bid rigging surrounding the purchase of Kentucky real estate—is entirely intrastate and does not involve "the generation of goods and services for interstate markets." Nor does the auction, sale or purchase of real estate involve "transport and distribution to the consumer" considering that a defining characteristic of real property is that it is immovable. Moreover, Plaintiff's brother is not a consumer of any goods but rather a beneficiary allegedly denied proceeds from the Estate. Because the auction of real estate

does not involve the generation of goods or services transported across state lines for consumers, Defendants activities cannot be said to be within the flow of interstate commerce under the "in commerce" test. *See id*.

This conclusion is further supported by the Supreme Court's discussion in *McLain* implicitly accepting the lower courts' conclusions that "[r]ealty [is] viewed as a quintessentially local product, and the brokerage activity described in the pleadings was found to occur wholly intrastate." *McLain*, 444 U.S. at 240, 242 (citation omitted). Accordingly, Plaintiff's claim fails to satisfy the "in commerce" test for establishing subject matter jurisdiction under the Sherman Act.

### B. Effect on Commerce Test

To satisfy the "effect on commerce" test, Plaintiff must plead facts demonstrating that "as a matter of practical economics," Defendants' activities "have a not insubstantial effect on the interstate commerce involved." *McLain*, 444 U.S. at 242 (citations omitted). This does not mean Plaintiff bears the burden of making a "more particularized showing of an effect on interstate commerce caused by the alleged conspiracy," because if there was such a requirement, "jurisdiction would be defeated by a demonstration that the alleged restraint fail[ed] to have its intended anticompetitive effect." *Id.* (citation omitted). In the Sixth Circuit, a plaintiff cannot merely allege "that some aspects of a defendant's business have a relationship to interstate commerce[]" to establish jurisdiction. *Stone*, 782 F.2d at 614 (citation omitted). Instead, "[t]he requisite showing will vary with the type of unlawful conduct alleged" and "the allegedly unlawful conduct itself must be shown to 'infect' those general business activities of the defendant which do, or are likely to, effect [sic] interstate commerce." *Id.* at 613-14 (adopting the Second Circuit's holding in *Furlong v. Long Island Coll. Hospital*, 710 F.3d 922 (2d Cir. 1983)).

The conduct at issue here is Defendants' alleged bid rigging activity at the subject auction. Plaintiff argues that her brother's status as a resident of Tennessee and his deprivation of $79,100 in proceeds from the estate sale shows that Defendants' conduct had a not insubstantial effect on interstate commerce. Plaintiff contends this is analogous to the conduct deemed to have had a substantial effect on interstate commerce in *McLain* and *Romer*.

In *McLain*, the Supreme Court considered claims against real estate firms and trade associations in the Greater New Orleans area alleging that they had, among other anticompetitive conduct, fixed commission prices in violation of Section 1 of the Sherman Act. *McLain*, 444 U.S. at 234-35. In determining whether defendants' conduct had an effect on interstate commerce for jurisdiction under the Sherman Act, the Court provided, "it is not sufficient merely to rely on identification of a relevant local activity and to presume an interrelationship with some unspecified aspect of interstate commerce." *Id.* at 242. Instead, a plaintiff must plead a "critical relationship between defendants' conduct and interstate commerce and, if those pleadings are controverted, must submit additional evidence demonstrating defendants' conduct has an effect on an "appreciable activity demonstrably in interstate commerce." *Id.* (citing *Gulf Oil*, 419 U.S. at 202).

The Supreme Court concluded that the plaintiffs there met this threshold in light of several aspects of defendants' brokerage activity that impacted interstate commerce. For one, "an appreciable amount of commerce [was] involved in the financing of residential property in the Greater New Orleans area and in the insuring of titles to such property." *Id*. at 511. Loans were provided from interstate financial institutions and out-of-state investors contributed funding. *Id.* "Multistate lending institutions took mortgages insured under federal programs which entailed interstate transfers of premiums and settlements. Mortgage obligations physically and constructively were traded as financial instruments in the interstate secondary mortgage market."

8

*Id.* When viewing the supplemented pleadings in the light most favorable to plaintiffs, the Supreme Court concluded the facts could support the inference that defendants' activities impacted interstate commerce and accordingly found jurisdiction under the Sherman Act. *Id.*

In *Romer*, the Fourth Circuit also found jurisdiction for the United States' bid rigging claims under the Sherman Act. *Romer*, 148 F.3d at 365. The United States alleged there that the defendants conspired to rig bids at real estate foreclosure auctions. *Id.* at 363. Although the auctions involved Virginia property, took place entirely within Virginia, and were between Virginian bidders only, the Fourth Circuit found an effect on interstate commerce where "[t]he driving force behind each auction was the financial interest of an out-of-state lender, who initiated the auction to recover the balance of an outstanding debt." *Id.*

In the present case, although Plaintiff's claims involve real estate transactions like *McLain* and *Romer*, her Complaint is devoid of allegations relating the subject transaction to interstate commerce sufficient to establish subject matter jurisdiction. Plaintiff pleads nothing regarding the likes of title insurance, lending institutions or any other aspect of the real estate transaction which have been found in other cases to constitute an adequate nexus between anticompetitive conduct and interstate commerce. *See McLain*, 444 U.S. at 245; *Romer*, 148 F.3d at 363.

Moreover, Plaintiff's Complaint contains no allegations relating to Defendants' business activities or how they have been infected by the allegedly anticompetitive conduct. In her reply, Plaintiff mentions in passing that Dyer is a licensed auctioneer and real estate broker, but provides no explanation how this status impacts the connection between Dyer's role and interstate commerce. *See Stone*, 782 F.2d at 614. Further, the Complaint contains no allegations relating to the interstate features of Dyer's business. Regarding Shelton, Plaintiff has offered absolutely

nothing regarding his role in this transaction, how this bid-rigging conduct relates to his general business activities, or even the general nature of his business.

Plaintiff's argument that her brother's status as a citizen of Tennessee is also unavailing for establishing jurisdiction under the Sherman Act because the interstate commerce affected under this argument is undoubtedly insubstantial. In *Stone*, the Sixth Circuit considered claims that a hospital and various staff members acted in concert to deprive the physician plaintiff of staff privileges in an unreasonable restraint on trade. *Stone*, 782 F.2d at 610. Because the gravamen of plaintiff's complaint was that he was excluded from using a local facility to perform catheterizations two or three times a month, the Sixth Circuit concluded that any effect on interstate commerce stemming from his denial of staff privileges was *de minimis* and insufficient for jurisdiction under the Sherman Act. *Id.* at 614-15. When viewed in light of the Sixth Circuit's conclusion that the few monthly operations in *Stone* have an insubstantial effect on interstate commerce, indirectly depriving Plaintiff's brother of auction proceeds as an heir to the Estate has even less of an effect on interstate commerce where the auction transaction at issue was a singular, one-time event. *See id*.

Where the conduct at issue here involved the auction of real property, Plaintiff has not satisfied the "in commerce" test. *See McLain*, 444 U.S. at 240, 242. Because Plaintiff fails to identify any aspect of Defendants' businesses that affect interstate commerce and because the gravamen of her Complaint—that her brother in Tennessee was denied $79,100 in auction proceeds—involves a one-time transaction, Plaintiff has failed to plead conduct which has a substantial effect on interstate commerce. *See id.* at 245; *Stone*, 782 F.2d at 614-15. With this, Plaintiff has failed to plead facts which could satisfy the "effects on commerce" test for subject matter jurisdiction under the Sherman Act.

Even considering her allegations as true, Plaintiff has failed to plead facts demonstrating Defendants' conduct has a substantial effect on interstate commerce under either the "in commerce" or the "effect on commerce" tests. *See McLain*, 444 U.S. at 242; *see also Bell*, 327 U.S. at 681-82. Accordingly, Plaintiff's claim is dismissed for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). In light of this, the Court finds it unnecessary to address Defendants' joinder arguments under Fed. R. Civ. P. 12(b)(7).

## V.  CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss (DN 6) is **GRANTED**, and Plaintiff's Complaint (DN 1) is **DISMISSED WITHOUT PREJUDICE**.

Greg N. Stivers, Chief Judge
United States District Court

May 9, 2019

cc:  counsel of record